# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

In Re:

RICHARD B. BASKET and SHELLIE D. COFFMAN-BASKETT,

    Debtors.

Case No. C07-5700RJB
Bankruptcy No. 05-52065-PHB

OPINION AND ORDER

This matter comes before the Court on review of the appeal of an order of the Bankruptcy Court by Terrence J. Donahue, Chapter 7 Trustee ("Trustee"). Dkt. 9. The Court has reviewed the relevant documents and the remainder of the file herein.

This appeal, brought by the Trustee, concerns the question of whether the debtor may claim an exemption for "personal bodily injury" pursuant to 11 U.S.C. § 522(d)(11)(D) and future lost income under 11 U.S.C. § 522 (d)(11)(E), and the amount of such exemptions.

## I. BASIC AND PROCEDURAL FACTS

On October 13, 2005, Richard B. Basket and Shellie D. Coffman-Baskett ("debtors") filed a petition for relief under Chapter 7 of the U.S. Bankruptcy Code. Debtors' Schedule B-Personal Property identifies a personal injury claim, with an asserted value of "unknown." Dkt. 9-15, at 4. (The underlying personal injury claim concerned only Shellie D. Coffman-Baskett.) Debtors' Amended Schedule C-Property Claimed as Exempt seeks to exempt the sum of $18,450.00 of the personal injury claim pursuant to 11 U.S.C. § 522(d)(11)(D). Dkt. 9-16, at 2. The Amended Schedule C- Property Claimed as Exempt

ORDER
Page - 1

does not assert any exemption under 11 U.S.C. § 522 (d)(11)(E). *Id*. The events which lead up to the personal injury claim were as follows:

On May 30, 2003, Ms. Coffman-Baskett was in the Old Cannery Furniture Warehouse Store ("Old Cannery") with her three year old daughter and Mr. Basket. Dkt. 9-30, at 4. Her daughter was standing next to golf cart sized replica of a 1957 Chevrolet with a large stuffed bear in the driver's seat. *Id*. For whatever reason, the bear fell on the gas pedal, and the car hit Ms. Coffman-Baskett. *Id*. An emergency medical response unit was called and transported her to Auburn Regional Medical Center. *Id*. She was observed with pain and abrasions. *Id*. X-rays taken of her pelvis, right hip, lower right leg, and left humerus did not reveal any fractures. Dkt. 9-26, at 2.

On June 4, 2003, Ms. Coffman-Baskett was examined by her chiropractic doctor, William G. Dedge, D.C. C.C.S.P. Dkt. 9-23. She complained of pain in the left shoulder, back, left hip, and right knee. *Id.* Dr. Dedge diagnosed her with cervicodorsal, lumbar, and right knee strain/sprain and cervicodorsal, lumbar (SI) segmental dysfunction. *Id*. He recommended she receive several weeks of manual adjustment procedures. *Id.* Dr. Dedge referred her for diagnostic x-rays. *Id.*

Robert Klein, M.D., examined Ms. Coffman-Baskett on June 9, 2003. Dkt. 9-24. His impression was that as a result of the accident, she had a sprain of the cervical spine with occipital headaches and cervical radiculitis to the left. *Id*. He opined that she had impact injuries to her left shoulder with rotator cuff and AC impingement, and lumbosacral spine sprain with sciatica to the right and left. *Id*. Dr. Klein diagnosed her with probable cartilage or ligamentous strain to the right knee, sprain of the left and right hips. *Id*. His further impression was that she had severe post-traumatic anxiety reaction and depression with crying spells. *Id*. Dr. Klein recommended Ms. Coffman-Baskett receive an MRI. *Id.*

On June 10, 2003, Ms. Coffman-Baskett was seen by Stephen Klein, Ph.D. at Allenmore Psychological Associates, P.S. Dkt. 9-22. Dr. Stephen Klein diagnosed her with adjustment disorder. *Id.* He recommended she receive further therapy in order to elevate and stabilize her mood, and to assist her in managing her anger and pain. *Id.*

On June 12, 2003 Ms. Coffman-Baskett had an MRI on her cervical and lumbar spine. Dkt. 9-27, at 2. Her chief complaint was pain in the right knee, lower back, left hip, left shoulder, and elbow. *Id.* The MRI showed mild degenerative changes in her cervical spine. *Id.* No evidence of significant disc

herniation or neural stenosis was found in her lumbar spine. *Id.* An MRI, done on June 13, 2003, of her left shoulder was normal. Dkt. 9-27, at 3. The MRI on her right knee showed the ACL, PLC, MCL, LCL, extensor mechanism and menisci, were all "grossly intact." *Id.* She had marrow edema, which Durba Dutta, M.D., opined "may be post traumatic such as osseous contusions or stress related injury." *Id.*

An MRI, approximately a year later, on her right knee, showed that the medial and lateral collateral ligaments, the anterior and posterior cruciate ligaments were intact. Dkt. 9-25. The marrow signal appeared normal. *Id.*

Prior to the accident, Ms. Coffman-Baskett worked as a ticket agent for Alaska Airlines. Dkt. 9-22, at 2. Her position required bending, stooping, and lifting heavy bags in order to put them on a conveyor belt. *Id.* She did not work for around six months as a result of the accident. *Id.* She did eventually return to work. *Id.*

The Bankruptcy Court approved appointment of special counsel, Tucker Blair, to handle Ms. Coffman-Baskett's personal injury claim against the Old Cannery. Dkt. 9-18. Acting on behalf of Ms. Coffman-Baskett, Mr. Blair sent the Old Cannery's insurance company, American Insurance Company, Firemen's Fund, a letter dated May 18, 2006. Dkt. 9-22, at 2-9. The letter stated that she had incurred a total of $12,498.83 in medical expenses, and $227.60 in medical supplies as a result of this accident. Dkt. 9-22, at 8. It stated that she had a loss of income of $7,659.47. *Id*. Accordingly, the letter claimed a total of $20,385.90 for special damages. The letter claimed she had physical pain, mental suffering and loss of ability and capacity to enjoy life, and made a demand for $40,000 for those general damages. *Id*. On July 26, 2006, Ms. Coffman-Baskett signed a Release and Hold Harmless Agreement with Old Cannery which stated that in consideration of thirty five thousand dollars ($35,000), she agreed to release "Old Cannery . . . from any and all claims . . . on account of bodily injury . . . resulting from a accident which occurred on May 30, 2003." Dkt. 10, at 82. The agreement further provides that the "sole basis of this release is the bodily injury claims of the undersigned." *Id*.

A Motion to Approve Settlement of Personal Injury Claim and to Approve Payment of Special Counsel's Fees and Costs was made on August 11, 2006. Dkt. 9-19, at 3. This pleading explained that the $40,000 settlement amount included $5,000 which was previously paid to medical providers by American Insurance Company, Firemen's Fund. *Id*. On September 1, 2006, the $40,000 settlement of the personal

1    injury claim was approved by the Bankruptcy Court after notice to creditors, Debtors, and Debtors'

2    counsel. Dkt. 9-21. The Bankruptcy Court also approved payment of special counsel's fees and costs, in

3    the amount of $14,190.86, for Mr. Tucker Blair. *Id*.

4        The Trustee filed an objection to the amount claimed as an exemption for the personal injury claim.

5    Dkt. 9-17. The parties briefed the issue, and on November 28, 2007, a hearing was held before U.S.

6    Bankruptcy Judge Philip H. Brandt, wherein evidence was admitted and testimony heard. At a hearing

7    held on December 11, 2007, Judge Brandt made an oral ruling and found that Ms. Coffman-Baskett had

8    been "significantly injured, was knocked down, was attended to by emergency medical techs, [sic] was

9    taken to the hospital, ended up with significant medical expenses, and a number of visits to her

10   chiropractor and her medical doctors." Dkt. 9-33, at 5. He found that of the $40,000 settlement he

11   approved, $5,000 was credited for medical expenses that had already been paid by the insurance company

12   that paid the settlement. *Id*. Judge Brandt found that there was personal bodily injury, and recovery for

13   personal bodily injury. Dkt. 9-33, at 6. He found and concluded further as follows:

> The demand letter, which was Exhibit M-1 admitted in the case, requested $2,498.83[1] for medical expenses, $227.60 for medical supplies, $7,647 for lost income, and $40,000 for general damages, including pain and suffering. The settlement, . . . was for $40,000. It was approved . . . [t]he net recovery after the deduction of legal fees and costs was roughly . . . $26,000. And again, the $5,000 came off the top.
>     So the remaining question is how much of that is exempt. The limit is $18,450 figure of the statute. And the statute excludes actual pecuniary loss, as well as recoveries for pain and suffering.
>     We have here an unallocated recovery. It's just simply a gross number. But we do know some of the components of that settlement were medical expenses of roughly $12,500 and the lost income of roughly $7,600. . . .
>     It seems to me that the actual pecuniary loss exclusion makes some sense when considered in the context of a statute as a whole. Section 10, subparagraph (e) allows the debtor to exempt payment and compensation of a loss of future earnings of the debtor or a dependent . . . to the extent reasonably necessary for support of a debtor or the defendant.
>     It seems to me that that comes into play here. And I think I can, applying the principle of applying or – or of amending the complaint to conform to the proof, treat the claim of exemption as, for this purpose, a complaint and amend the claim of exemption under subparagraph (e) for the lost wages.
>     And I think I can find – and I believe – I can find – not just that I think I can find – I can find from the testimony that those lost wages were reasonably necessary for Ms. Coffman's support. She was out of work for roughly six months . . . .
>     So that leaves the remainder. The roughly $12,000 in medical expenses . . . are not actual pecuniary losses. Pecuniary, under the Webster's Collegiate Dictionary definition, means relating to money. . . . I can understand that as applying to lost wages and excluding lost wages from subparagraph (d). I do not understand that as relating to damages that

---

[1] Parties note that the medical expenses were $12,498.83 not $2,498.83 as is reflect in both the demand letter and in Judge Brandt's later statements. This appears to be an inadvertent error.

ORDER
Page - 4

> result from incurring expenses as a result of the injury. Thus, the medical expenses.
> So it seems to me that to the extent there is a recovery for medical expenses, that's not actual pecuniary loss. It's not excluded from the calculation of what may be exempted.
> Between those two numbers, we come to a number roughly $20,000, which exceeds the $18,450 for which the exemption was sought. And so I will conclude that the debtor's entitled to exempt $18,450 in accordance with the statute with the, obviously, adjustments I've made by considering under both of those subparagraphs.
> Had the debtor separately claimed the lost wages under (e) - or the lost income under (e) and the full $18,450 under (d), we would have a different issue. But as the total claim of exemption is $18,450, and those two categories add up to more than that number, I will sustain the claim of exemption in the about of $18,450.

Dkt. 9-33, at 4-9.

Judge Brandt entered an a written order overruling the Trustee's objection to the amended claim of exemption of the debtor, and found debtor was entitled to exempt $18,450 under 11 U.S.C. § 522 (d)(11)(D) and (E). Dkt. 9-12, at 2.

## APPEAL

On December 20, 2007, the Trustee filed a Notice of Appeal of the order overruling the Trustee's objection to the amended claim of exemption, issued by U.S. Bankruptcy Judge Phillip H. Brandt. Dkt. 1. The parties have designated the record and have briefed the issues before the court.

In this appeal, the Trustee contends that: (1) the Bankruptcy Court erred in allowing debtors an exemption under 11 U.S.C. § 522(d)(11)(E) for loss of future income, (2) medical expenses are pecuniary losses that are not subject to exemption, (3) Ms. Coffman-Baskett's soft tissue injuries do not justify a full exemption amount of $18,450.00. Dkt. 9.

In response, debtors argue that: (1) the Bankruptcy Court properly held that debtor was entitled to exempt the full $18,450 of the settlement amount, (2) the Bankruptcy Court was correct in ruling that medical expenses are not pecuniary losses and therefore subject to exemption under 11 U.S.C. § 522(d)(11)(D), and (3) the Trustee failed to carry his burden in showing that the full amount of the $18,450,00 exemption should be disallowed. Dkt. 10.

In reply, the Trustee argues that: (1) the debtors' fail to address the issues concerning 11 U.S.C. § 522(d)(11)(E) and the Bankruptcy Court's allowing an exemption for lost future wages, (2) Ms. Coffman-Baskett's medical expenses are actual pecuniary loss suffered as a result of her personal injury claim, and (3) Ms. Coffman-Baskett's soft tissue injuries do not justify an exemption in the amount allowed by the Bankruptcy Court. Dkt. 11.

ORDER
Page - 5

## II. DISCUSSION

### A. STANDARD OF REVIEW

In reviewing a decision of the Bankruptcy Court, the district court reviews the Bankruptcy Court's findings of fact under the clearly erroneous standard. *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir.1990). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer,* 470 U.S. 564, 573 (1985)(*internal citations omitted*). The conclusions of law of the Bankruptcy Court are reviewed de novo. *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir.1990). Mixed questions of law and fact are reviewed de novo. *In re Bammer*, 131 F.3d 788, 791-92 (9th Cir. 1997). The district court reviews the scope of a statutory exemption de novo as well. *In Re Chappell,* 373 B.R. 73, 76 (9th Cir. BAP 2007).

As the objecting party here, the Trustee has the burden of proving that the exemptions are not properly claimed. *In re Ciotta*, 222 B.R. 626 (Bankr. C.D. Cal. 1998); Fed. R. Bankr. P. 4003(c).

### B. LOSS OF FUTURE INCOME EXEMPTION

Pursuant to 11 U.S.C. § 522(d)(11)(D), (referenced herein as Section (D)), a debtor could claim an exemption for a payment, not to exceed $18,450, "on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss . . ." The exemption amount is a little more as of the date of this order, however, "[t]he critical date for determining exemption rights is the petition date," *In Re Chappell,* 373 B.R. 73, 77 (9th Cir. BAP 2007), and parties do not dispute that the proper exemption amount at the time was $18,450.00. Under 11 U.S.C. § 522(d)(11)(E), (referenced herein as Section (E)) a debtor may claim an exemption for the "right to receive, or property that is traceable to a payment . . . in compensation of loss of future earnings of the debtor . . . to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

The Bankruptcy Court noted that the settlement here was unallocated, but that the Ms. Coffman-Baskett's attorney's letter to the Old Cannery stated that she had around $7,647 in lost earnings. Dkt. 9-33, at 4-9. He found that Ms. Coffman-Baskett was "out of work for roughly six months" due to the accident. *Id*. The evidence as a whole supports the Bankruptcy Court's factual finding that Ms. Coffman-Baskett was out of work due to her injuries which resulted from the accident. The Bankruptcy Court then

found that Section (E) applied and concluded that the exemption of $18,450.00 should be sustained, in part, due to the fact that Ms. Coffman-Baskett had lost income. *Id*.

The plain language of Section (E) allows an exemption for "compensation of loss of future earnings." There is nothing in the record to support the assertion that any of the $40,000 settlement was intended to compensate Ms. Coffman-Baskett for the loss of future earnings. The May 2006 letter specifically referenced past lost earnings. Dkt. 9-22, at 7. It provided,

> As a result of the injuries she sustained in this accident, she was out of work completely from March 30, 2003 to November 27, 2003, resulting in a loss of income to her of $7,659.47. This figure was calculated based on her then/current yearly salary at Alaska Airlines of $11,585.60, and the total time off from that job of 26 weeks.

Dkt. 9-22, at 7. (Although the letter references March 30, 2003, the accident occurred in May of 2003.) Parties do not dispute that Ms. Coffman-Baskett returned to work after the incident. The Bankruptcy Court erred in concluding that Ms. Coffman-Baskett was entitled to an exemption under Section (E) for the compensation of lost wages here. The most reasonable inference from the record is that, to the extent that the settlement was intended to compensate her for wages, it was for past lost wages as opposed to the loss of future earnings. To the extent that the Bankruptcy Court concluded that any of the claimed $18,450 exemption included her claim for wages, it was in error.

### C. MEDICAL EXPENSES

The Bankruptcy Court's factual finding that the unallocated settlement amount was intended, in part, to compensate Ms. Coffman-Baskett for medical expenses was clearly erroneous. "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer,* 470 U.S. 564, 573 (1985)(*internal citations omitted*). At the time the settlement was approved, the evidence in the record showed that $5,000 in medical expenses had already been paid by Old Cannery's insurance provider. Dkt. 9-19, at 3. The Release and Hold Harmless Agreement states that the "sole basis of this release is the bodily injury claims," and was for $35,000, (Dkt. 10, at 82), $5,000 less than the approved settlement amount. Conversely, there is no evidence in the record to support the conclusion that the remainder of the unallocated $35,000 was intended to pay for additional medical expenses. The Bankruptcy Court then went on to conclude that compensation for medical expenses is not "compensation for actual pecuniary loss," and so the approximately $12,500 Ms. Coffman-Baskett claimed

ORDER
Page - 7

1 in her demand letter was not excluded from her exemption under Section (D). Dkt. 9-33, at 8-9.

2 In any event, the exemption question raised by the debtors' medical expenses is whether those expenses are "actual pecuniary loss" under Section D. The Bankruptcy Code's definition section - 11 U.S.C. § 101 - does not define that phrase or those words, and the Court found no case law containing such definitions. In such cases, it is appropriate to turn to the venerable Black's Law Dictionary, Eighth Edition. That tome defines "pecuniary loss" as "a loss of money or of something having monetary value." (*See* p. 964). "Loss," in Black's, is further divided into "direct loss" - "a loss that results immediately and proximately from an event" and "consequential loss" - " a loss arising from the results of damage rather than from the damage itself." (*See* p. 964).

Applying these definitions to debtors' medical expenses, it appears that they do not represent a pecuniary loss, (or a direct loss), but are at most a consequential loss. It follows that, even if they were to be included as a part of the unallocated settlement, under Section (D), the medical expenses should not be deducted from debtors' exemption.

### D. EXEMPTION AMOUNT FOR INJURIES SUSTAINED

Judge Brandt found that Ms. Coffman-Baskett sustained actual personal bodily injury. Dkt. 9-33, at 6. He noted that Ms. Coffman-Baskett had been "significantly injured" and had "significant medical expenses." Dkt. 9-33, at 5. Judge Brandt found that due to the accident she had to make "a number of visits" to various medical providers. *Id*. The evidence in the record supports Judge Brandt's conclusion that Ms. Coffman-Baskett had sustained actual personal bodily injury and that her injuries were significant. Furthermore, Ms. Coffman-Baskett's Release and Hold Harmless Agreement with Old Cannery designated that the sole basis of the settlement was her "bodily injury claims," and did not include any separate sums for pain and suffering. Dkt. 10, at 82. Under these circumstances, debtors are entitled to the full $18,450 exemption if there are sufficient funds available.

### E. CONCLUSION

Of the $35,000 available, fees and costs of $14,190.86 and lost income of $7,659.47 should be deducted, leaving $13,149.67, which is exempt.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

- The Bankruptcy Court's Order overruling the Trustee's objection to the amended claim of exemption of the debtors is **REVERSED, IN PART**, **AFFIRMED, IN PART,** to the extent stated above;
- This matter is **REMANDED** for further proceedings consistent with this opinion and order;
- The appeal of the Trustee is **DISMISSED**; and
- The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 2nd day of June, 2008.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge